Thomas M. McBride, Jr., brought this suit to recover for the damage sustained by his automobile in an intersectional collision which occurred at the corner of Sycamore and Joliet Streets in the city of New Orleans. The defendants in the case are Dr. George R. Gill, the owner of the other automobile, Miss Lucille Harris, the driver, and Massachusetts Bonding Insurance Co., the liability insurance carrier of Dr. Gill.
Plaintiff charges that, on May 4, 1941, at about 4:30 p.m., his car was being driven on Sycamore Street in the direction of Protection Levee by his son, Thomas McBride III, a young man 18 years of age; that, when the car reached the intersection of Joliet Street and had entered it, the Gill car, which was being driven by Miss Harris on Joliet Street in the direction of Lake Ponchartrain, came over the crossing and ran into the left front wheel, fender and bumper of his car, causing damage to the extent of $218.75; that the accident was caused solely by the negligence of Miss Harris; that she was speeding and not keeping a proper lookout; that she did not have her car under control and failed to accord his son the right of way; that she failed to stop her car in time to avert the accident, although she could have stopped, and that, when the accident was impending, "she took her hands off of the steering wheel, covered her face, and abandoned her car to its fate." *Page 644 
In due course, the defendants answered, admitting the accident and that Miss Harris was acting for and on behalf of Dr. Gill at the time it occurred, but denied responsibility for plaintiff's damage on the ground that Miss Harris was not at fault. Alternatively, they pleaded that they were not liable in any event because young McBride was guilty of contributory negligence; that he was driving the McBride car at a reckless speed of 50 or 60 miles an hour and that he neither had the car under control nor did he exercise a proper lookout.
After a hearing in the trial court on these issues, there was judgment in favor of plaintiff for $218.75. The defendants have appealed.
It will be seen from the above recitation of the pleadings that the questions to be determined are purely ones of fact. The record reveals that the accident occurred on a bright day at the intersection of Sycamore and Joliet Streets. Sycamore is a paved one-way street for traffic proceeding in an uptown direction from the business district towards Jefferson Parish. Joliet Street, which intersects Sycamore at right angles, is a two-way black topped street, the surface of which is quite rough. At the time of the accident, the McBride car was proceeding out Sycamore Street in the direction of Jefferson Parish and the Gill car was travelling on Joliet Street toward Lake Ponchartrain. When the two cars reached the intersection and had proceeded therein, they collided; the left front fender and bumper of the McBride car and the right front fender and bumper of the Gill car contacting each other with such force that the right side of the Gill car sideswiped the left side of the McBride car.
The evidence further discloses that the view of the participants in the accident of traffic travelling on Joliet and Sycamore Streets, respectively, was obstructed by the presence of a house and a large tree which are located on the lower riverside corner of the intersection and that the crossing is a "blind" one within the contemplation of Article V, section 3, of the city traffic ordinance.
Miss Harris testified that, prior to the accident, she had attended a social function on Panola Street and that it was her intention to go to Lake Ponchartrain, where she had arranged to meet Dr. Gill, the owner of the car she was driving; that she proceeded out Joliet Street; that she was not well acquainted with the neighborhood and was wondering which would be the best way to go to the lake; that, when she arrived at the intersection of Sycamore Street, she brought the car to a stop and looked down Sycamore Street for traffic proceeding towards Jefferson Parish; that, from her stopped position, she could see approximately one-half or three-quarters of a block down Sycamore Street and, upon failing to observe the presence of any traffic, she then looked up Sycamore Street (being undecided whether she would turn in Sycamore Street or proceed straight across); that she elected to continue on Joliet Street and started to cross the intersection; that, just as the front parts of her car came into the crossing, she then saw (for the first time) the McBride car, which had come out Sycamore Street at a terrific rate of speed (40 or 50 miles per hour according to her estimate); that, when she saw the McBride car, it was between five and seven feet to the right of her car and that the collision between the front parts of the two cars followed almost instantaneously. She states that the initial contact of the automobiles was of such force that her car was shunted to the left, causing its right side to come in contact with, or sideswipe, the left side of the McBride car and that it was veered from its original course to the left up Sycamore Street, where it finally came to rest at or upon the Lakeside curbing of that street.
An analysis of Miss Harris' testimony has convinced us that she was negligent. We think that it is manifest from her statement that she was not exercising a proper lookout and that her attention was directed chiefly to the best route of travel to Lake Ponchartrain, rather than upon the traffic which she should have expected to encounter on the public highways. She says that, after she stopped at the corner of Sycamore Street and looked for traffic coming from her right, she looked to the left, out Sycamore Street, and then proceeded to make a crossing without again looking to her right. This was imprudent, because she was aware that Sycamore was a one-way street for traffic coming from her right and it was hazardous for her to attempt a crossing without focusing her main attention upon cars coming from that direction. The fact, if it be a fact, that the McBride car was being operated at a high rate of speed does not excuse Miss Harris' negligence in not looking again to her right into Sycamore Street before attempting to *Page 645 
proceed across the intersection, for no matter how great the speed of the McBride car, she would have been bound to see it, if she was travelling, as she says, at the slow speed of 5 miles per hour.
However, the fact that Miss Harris was guilty of negligence does not warrant the finding of the trial judge in favor of the plaintiff if, as contended by the defendants, young McBride was guilty of contributory negligence. An examination of the record has been sufficient to leave no doubt in our minds that young McBride was speeding; that he did not have his car under control and that, if he was exercising any lookout whatever, the speed of his car was such that he could not adequately use the means at his command to avert the accident.
McBride testifies that he was going to a fire; that he was on Carrollton Avenue when he heard the siren blow; that he turned into Sycamore Street at a speed of 20 to 25 miles per hour and continued on Sycamore Street at the same rate; that, when he neared the intersection of Joliet Street, he took his foot off the accelerator and coasted toward the corner; that, when he was 25 feet from the intersection, he could only see a distance of 10 feet towards his left into Joliet Street; that, upon failing to see any traffic from that point, he put his foot upon the accelerator and proceeded across the intersection and that, just as he was going over it, the Gill car, which had come into the crossing after he had preempted it, struck him on the left side.
McBride's testimony, as to his speed of 20 to 25 miles per hour, is flatly contradicted by Miss Harris, who says he was going 40 to 50 miles per hour, and by Mrs. Eugene Kell, a disinterested witness. Mrs. Kell states that she lives on the lower riverside corner of Sycamore and Joliet Streets; that she was seated on her front porch, facing Sycamore Street, at the time of the accident; that she heard the McBride car coming up Sycamore Street at a terrific rate of speed and immediately saw it pass at such speed; that, fearing that an accident was impending which she did not wish to witness, she put her hands over her face and rushed into the house and that, simultaneously, she heard the crash. Her testimony, aside from its corroboration of Miss Harris' evidence respecting the speed of the McBride car, is amplified by the pictures of the damaged automobile which were offered in evidence. These pictures, which show considerable damage to the left front fender and bumper of plaintiff's automobile, are vivid portrayals of the speed at which it was evidently travelling.
Counsel for plaintiff seek to discount the evidence of Mrs. Kell, suggesting that the witness did not actually see the McBride car and that she is unable to give the approximate speed at which it was being driven. But Mrs. Kell explains that she does not drive a car and, therefore, is unable to estimate speed in miles per hour. However, like all who live in this age of automobiles, she rides in them, sees them in operation on the streets daily, and hence is well qualified to discern the difference between an ordinary speed and an excessive rate.
Counsel also maintain that a finding of excessive speed on the part of the driver of the McBride car does not preclude plaintiff's recovery because Miss Harris' negligence was the proximate cause of the accident. And he cites, in support of this proposition, the well-recognized rule that the violation of a traffic ordinance is not negligence per se and two decisions of this court, namely, Ætna Casualty Co. v. Lee, 10 La.App. 763, 123 So. 137 and Bordlee v. Di Carlo, 17 La.App. 200, 135 So. 725.
It is, of course, true that the mere violation of a traffic ordinance is not negligence per se but, where the violation contributes to or has causal connection with the accident, recovery will be defeated. In the case at bar, it is clear to us that not only did young McBride's speed have causal connection with the ensuing accident but that this, together with his failure to have his car under proper control, was one of the direct, immediate and proximate causes thereof.
The cases relied upon by counsel for plaintiff are without application. In Bordlee v. Di Carlo, the court found the defendant to be negligent and held him liable, notwithstanding plaintiff's negligence, as defendant did not plead contributory negligence.
In Ætna Casualty Co. v. Lee, Kennedy's automobile was struck on its side by the defendant's car after it had preempted the intersection at a speed of 25 miles an hour. There, we held that the fact that the Kennedy car, which was insured by the plaintiff, was going 25 miles an hour in a *Page 646 
15 mile zone in violation of the city ordinance had no causal connection with the accident, as the defendant dashed headlong into the side of the Kennedy car while it was crossing the intersection. Here, the situation is different; the two automobiles reached, and came into, the intersection at approximately the same time. In fact, it seems probable that the Gill car, which was unquestionably travelling at a slower rate of speed than the McBride car, entered the intersection first. In these circumstances, both parties must be held to be at fault.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be and it is dismissed at his cost.
Reversed.